UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

ROBERT GETSO,

                    Plaintiff (Pro Se),          10 Civ. 4624

    -against-                                     OPINION

HARVARD UNIVERSITY EXTENSION SCHOOL,

                    Defendant.

----------------------------------------X


A P P E A R A N C E S:


        Pro Se

        ROBERT GETSO
        P.O. Box 1043
        Old Chelsea Station
        New York, NY 10113

        Attorneys for Defendant

        FRIEDMAN KAPLAN SEILER & ADELMAN LLP
        1633 Broadway
        New York, NY 10019
        By:  Katherine L. Pringle, Esq.
             Andrew S. Pak, Esq.

Sweet, D.J.

Defendant Harvard University Extension School (the "School" or "Defendant") has moved to dismiss the complaint of plaintiff pro se Robert Getso ("Getso" or "Plaintiff"), pursuant to Fed. R. Civ. P. 12(b)(6), and, alternatively, for summary judgment, pursuant to Fed. R. Civ. P. 56.  Based on the facts and conclusions set forth below, the motion is granted.

**Prior Proceedings**

Getso filed his complaint on June 14, 2010, alleging the following facts:

- In 2006, Suzanne Spreadbury, Associate Dean of the School ("Dean Spreadbury"), and Lawrence Summers, President of Harvard University, "promised, in a written statement, completion of a Harvard University Extension School program upon successful completion of two specific Harvard Extension School courses." (Compl. ¶ 6.)

- Getso relied on this promise in deciding to enroll in the School some four years later.  (Id. ¶¶ 6, 8.)

- "Upon his enrollment at Harvard University Extension School and registration for courses," Getso and the School "entered into an agreement."  (Id. ¶ 9.)

- The agreement required Getso to pay the School, and "[i]n exchange, the Harvard University Extension School promised to provide [Getso] with an array of educational services, the opportunity to participate in its program and graduate upon successful completion of two remaining course requirements."  (Id. ¶ 29.)

1

- The contract "guarantees to Robert that, while he was a registered student pursuing the course requirements at Harvard University Extension School, he would . . . [be] provided an opportunity to successfully complete the Program." (Id. ¶ 32.)

- The School violated this alleged contract when it notified him that he is ineligible for the undergraduate degree program. (Id. ¶ 37.)


Getso filed his amended complaint on August 16, 2010. Both the complaint and amended complaint set forth the same five claims for relief: (1) breach of contract ("Count I"); (2) breach of the covenant of good faith and fair dealing ("Count II"); (3) tortious interference with contract ("Count III"); (4) promissory estoppel ("Count IV"); and (5) declaratory relief ("Count V"). (See Compl. ¶¶ 27-64; Am. Compl. ¶¶ 38-76.) Both allege that the School is contractually obligated to provide Getso with "an array of educational services, the opportunity to participate in its program and graduate upon successful completion of the remaining rigorous course requirements (plus fees), and alumni services." (Am. Compl. ¶ 40; Compl. ¶ 29.)


The complaint included 4 exhibits and the amended complaint included 14 exhibits that allegedly constitute the contract. The amended complaint also contains expanded references to the Americans with Disabilities Act ("ADA") and

2

the Family Educational Rights Privacy Act ("FERPA").  These are not alleged as separate claims, but rather are mentioned in connection with Getso's contract claims.  (See Am. Compl. ¶¶ 38-55.)  Otherwise, the amended complaint is essentially identical to the complaint.

The instant motion was marked fully submitted on September 22, 2010.

**The Facts**

The material facts are set forth in Defendant's Local Rule 56.1 Statement of Material Facts and in Getso's opposition papers,[1] and are not in dispute except as noted below.

Harvard University Extension School is not a legal entity subject to suit.  President and Fellows of Harvard College ("Harvard") is the legal entity that comprises the School and is the only proper party to this litigation.

---

[1]     Getso's opposition papers are styled a "Cross-Motion to deny the defendant's Motion for Summary Judgment."

The School offers students the following two different educational opportunities:  (1) students can take the School courses that are offered to the general public; or (2) students can apply to and, if accepted, enroll in one of the School's undergraduate degree programs to pursue a Harvard University Extension School undergraduate degree.

Approximately 80 percent of the students enrolled in courses at the School are not enrolled in a degree program, and are taking courses for a wide variety of reasons, including intellectual curiosity and personal or professional enrichment.

At the time Getso applied to the School, prospective applicants were required to earn a "B-" grade or higher in three required pre-admission courses and to meet certain other miscellaneous criteria before applying to the undergraduate degree program.

The online application form requires applications to list all prior college and degree information, and to submit transcripts from such schools.  The application states as follows:

> It is important that you enter all accredited prior college and universities, regardless if you want

4

transfer credit or if you withdrew from all courses. If the school has a record of your attendance, then we need a transcript.  <u>Not listing a prior school is a serious misrepresentation</u> that is sent to the Harvard Extension School Board who will take disciplinary action.

(Emphasis in original.)


The School requests information about an applicant's prior schooling for two reasons.  First, the School does not ordinarily provide degrees to individuals who already posses an equivalent degree or who have already completed a substantial portion of the undergraduate coursework at other institutions. Second, the School chooses not to admit into its degree programs students who have outstanding financial obligations with other institutions, and uses and applicant's disclosed prior college and degree information to determine whether the applicant has any such debts outstanding.


Upon completing an online application form, applicants are required to print and sign a signature page that must be mailed to the School along with certain supplementary materials. An application is not complete, and will not be considered, without the signature page.  The signature page states as follows:

5

It is important that your application be accurate and complete. Occasionally candidates for admission have made inaccurate statements or submitted false materials in connection with their applications (e.g., not listing a prior college, misrepresenting their native language, or plagiarizing their essays). In most cases these misrepresentations are discovered during the admission process and the application is rejected with notification to the Harvard Extension School Administrative Board who may take disciplinary action. If misrepresentations are discovered after a candidate is admitted or a degree has been awarded, dismissal or revocation of the degree will ordinarily result.

By signing this form, I certify that the information is accurate and complete.

All applicants must sign the notice and certification because, as indicated in the notice itself, the School views and applicant's honesty and forthrightness in his or her application as a material and independent consideration when deciding whether to accept an applicant into a degree program.

Between 1983 and 1987, Getso took a number of courses at the School.

In November 2005, Getso wrote a letter to then-Dean Michael Shinagel, noting that he had returned from overseas service in Iraq and asking what he would need to do to "complete the AA [Associate in Arts degree] before [his] return to duty

with the military services overseas."  Getso's inquiry was
eventually forwarded to Dean Spreadbury for response.

Dean Spreadbury emailed Getso informing him that she
had reviewed his records, and in order to earn the degree he
would need to complete four listed requirements.  In the same
email, Dean Spreadbury said that if Getso still wanted to pursue
and Associate in Arts degree, she would be "happy to go into
much more detail about the application and course selection
process."

In March 2010, Getso applied to the School degree
program.  Getso's application did not disclose any prior
colleges attended or degrees earned and Getso did not submit any
transcripts from any prior colleges with his application.  He
did, however, submit a signed certification form certifying that
his application was accurate and complete.

Upon reviewing Getso's application and file, Dean
Spreadbury noticed that in prior correspondence with faculty at
the School, Getso had mentioned having degrees from other
colleges and referred to himself as "Dr. Robert Getso," raising
questions about his eligibility for an undergraduate program.

7

Dean Spreadbury emailed Getso on three separate occasions inquiring about his prior studies, asking why he had not disclosed any other colleges or universities on his application.  In response to each of these inquiries, Getso neither confirmed nor denied that he had attended any other colleges or universities.

Ultimately, Dean Spreadbury confirmed that Getso had in fact attended other colleges and universities, and that he held numerous degrees.

Dean Spreadbury rejected Getso's application because of the misrepresentations in his application and, independently, because of his evasiveness and refusal to answer her reasonable questions.

Although Getso's application to the School degree program has been rejected, he is still permitted to enroll in courses at the School.  As of the date of the submission of papers on the instant motion, Gets was enrolled in a number of courses at the School.

**No Contract is Adequately Alleged**

An enforceable contract "requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration."  Restatement (Second) of Contracts § 17 (1981); see, e.g., Express Indus. & Terminal Corp. v. New York State DOT, 715 N.E.2d 1050, 1053 (N.Y. 1999) ("To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."); Situation Mgmt. Sys. v. Malouf, Inc., 724 N.E.2d 699, 703 (Mass. 2000) ("It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement.").  A contract must also be sufficiently clear, so that there are terms the court may enforce.  See Express Indus., 715 N.E.2d at 1053 ("This requirement assures that the judiciary can give teeth to the parties' mutually agreed terms and conditions when one party seeks to uphold them against the other."); Lambert v. Fleet Nat'l Bank, 865 N.E.2d 1091, 1096 (Mass. 2007) (a contract's "extreme vagueness" makes enforcement impossible and "indicates that there was no intent to be bound and thus no agreement").

9

The documents that Getso alleges constitute a contract do not show any manifestation by the School of any agreement with him, and do not state any terms to be enforced.

Exhibits 1 through 3 of the complaint are requests for information by Getso.  Exhibits 1 and 2 (two copies of the same letter) request information regarding the courses required to complete a degree program.  Exhibit 3 is Getso's request to review his records.  These unilateral requests are not in themselves terms of an agreement, do not reference terms of an agreement, and in no way establish or evidence any assent to a bargain on the part of the School.

Exhibit 4 is a promotional brochure about the School degree program.  That brochure makes explicit that participation in the degree program follows an application process.  As stated in Exhibit 4:

> Before applying, you need to complete three 4-credit degree courses at Harvard Extension School or Summer School and earn at least a B- in each.  One of the courses must be EXPO E-25 or Harvard Summer School's EXPO S-20.  These courses count toward the degree once you are admitted.  See the website for more admission details and specific course selection guidelines.

(Emphasis added.)  The first two words of the quoted language establish that the pre-requisite courses described therein are

necessary for applying for the degree program, but are not sufficient for acceptance to the program.

Getso has alleged that the School's contract with him entitled him to be enrolled in a degree program and complete his degree.  (Compl. ¶¶ 29, 32, 37.)[2]  However, none of these exhibits, either individually or collectively, reflects any agreement at all, much less an agreement to accept Getso or award him a degree.  Count I, Getso's claim for breach of contract, is therefore dismissed.  Count II, Getso's claim that the School breached the covenant of good faith and fair dealing inherent in the alleged contract, is also dismissed for lack of any underlying contract.

Getso's promissory estoppel claim is premised upon an alleged promise by Dean Spreadbury in 2006 of "completion of a Harvard University Extension School program upon successful completion of two specific Harvard Extension School courses."

---

[2]    Paragraph 9 of the Complaint can also be interpreted to allege that the alleged contract required that Getso be provided with access to the courses he paid for.  (Compl. ¶ 9.)  To the extent these are the alleged terms of the contract, Getso's contract claims also fail because Getso has not alleged a violation of the contract.  Getso paid for the Harvard courses he took in the past, and the few courses he was enrolled in as of the date of the filing of papers on the instant motion, and received access to the courses for which he paid.  He has not alleged that the School has at any time prevented him from taking the courses for which he paid.

(Compl. ¶¶ 6, 56.)   Under both New York and Massachusetts law, a promissory estoppel claim requires: (i) that the underlying promise is clear and unambiguous and (ii) that plaintiff is foreseeable and reasonably relied on the promise to his detriment.   Agress v. Clarkstown Cent. Sch. Dist., 895 N.Y.S.2d 432, 434 (N.Y. App. Div. 2010); Rhode Island Hosp. Nat'l Bank v. Varadian, 647 N.E.2d 1174, 1178 (Mass. 1995).   Neither element can be found in Getso's complaint.

First, the alleged promise of "completion of a Harvard University Extension School program" on completion of two courses is not clear and unambiguous.   Getso does not allege that he was told what courses he would have to take, and he admits he had to send a letter in 2009 asking for identification of these courses.   (Compl. ¶ 23.)   More generally, the statement does not suggest that Getso would only have to take the two referenced courses in order to complete a degree, or that he was being exempted from the application process.   What Getso has described in the complaint is correspondence regarding certain course requirements, not a promise of enrollment or promise of a degree.   The alleged statement is simply too unclear and ambiguous to support a claim for promissory estoppel.

12

Second, the statement is not one on which Getso could reasonably or foreseeably rely as a promise of admission. This is particularly true where the School materials state that a student must apply and be admitted to its degree program. Nothing in the alleged promise suggested that Getso would be exempted from the admissions process or guaranteed a degree. The vague statement described in the complaint cannot reasonably be relied upon as a binding promise of admission or completion of a degree program. See Mangla v. Brown Univ., 135 F.3d 80, 85 (1st Cir. 1998) (finding, as a matter of law, that "Brown [University] should not have reasonably expected Mangle to rely on oral statements of Dean Lusk or the individual faculty members as binding promises of admission") (applying Rhode Island's law of promissory estoppel, which mirrors the New York and Massachusetts counterparts).

Finally, the claim for tortious interference fails both because there was no contract, as discussed above, and because Getso improperly alleges that the School was interfering with its own alleged contract. An essential element of the claim is "the existence of a valid contract between plaintiff and a third party." Foster v. Churchill, 665 N.E.2d 153, 158 (N.Y. 1996); Alba v. Sampson, 690 N.E.2d 1240, 1243 (Mass. App.

13

Ct. 1998).  Even if a valid contract exists, a defendant cannot
be liable for tortious interference with a contract to which it
is a party.  See Mihalakis v. Cabrini Med. Ctr., 542 N.Y.S.2d
988, 990 (N.Y. App. Div. 1989) ("[A] party to a contract cannot
be held liable in tort for breaching its own contract."); Brown
v. Armstrong, 957 F. Supp. 1293, 1305 (D. Mass. 1996) (a
defendant "cannot be liable for tortious interference with his
own contract").

     Getso responded to the School's motion by submitting
an amended complaint with more exhibits and removing Exhibit 4,
the School degree program promotional brochure.  Several of the
additional exhibits establish that Getso was or should have been
aware that he would have to apply to the degree program, and be
accepted, in order to be eligible for an undergraduate degree
from the School.  The remaining exhibits to the amended
complaint do not evidence or manifest any agreement between
Getso and the School to be enrolled in the degree program or to
receive a degree.  Accordingly, no contract has been alleged in
the amended complaint.

     Getso's submission in opposition confirms that the
promise on which he claims to have relied was a November 2005

14

email from Dean Spreadbury.  (Am. Compl. ¶¶ 6, 7 & Ex. 1.)
However, as set forth above, that email explicitly stated that
Getso would need to be admitted to the undergraduate degree
program in order to pursue a degree.

The amended complaint refers to an August 28, 2009
email from Michael Sedelmeyer regarding a specific course
requirement.  (See Am. Compl. ¶ 6 & Ex. 2.)  However, this email
also indicated that a sufficient grade in the course would not
guarantee a degree or admission to the program, by stating that
"[d]uring the semester you are taking this course, you will be
able to apply for admission to our degree program."  (Id. Ex. 2
(emphasis added).)  The amended complaint also annexes certain
excerpts from a blog, none of which indicates an enforceable
promise from the School.

Count III of the amended complaint continues to allege
that Defendant interfered with its own contract.  Getso has
alleged in his opposition papers that the School "threatened to"
and "might" interfere with a summer school program.  (Opp. Br.
¶¶ 4-15.)  However, he does not allege that this threatened
interference actually occurred, or that that he was unable to
complete his summer school classes.  See Foster, 665 N.E.2d at

15

156 (a tortious interference claim requires proof of "the defendant's intentional procuring of the breach"); Alba, 690 N.E.2d at 1243 (same). Moreover, because the School and the summer school are party of the same legal entity — Harvard — an allegation of interference with the summer school is legally insufficient.

In his opposition, Getso has made reference to the ADA and FERPA, but has admitted that he never required any disability accommodations. (Opp. Br. ¶¶ 12, 18.) He therefore has no basis for seeking relief under the ADA. See Fulton v. Goord, 591 F.3d 37, 41-42 (2d Cir. 2009) (injury-in-fact required for standing to pursue an ADA claim). As to FERPA, "[i]t is well-established in the Second Circuit that FERPA itself does not create a private cause of action to enforce its provisions." Curto v. Smith, 248 F. Supp. 2d 132, 140-41 (N.D.N.Y. 2003) (citing Fay v. Sout Colonie Cent. Sch. Dist., 802 F.2d 21, 23 (2d Cir. 1986)). Getso therefore cannot sue under FERPA.

Finally, the amended complaint contains a passing reference to Getso's Constitutional rights and alleges that the School's decision violates "fundamental fairness," such a Due

16

Process claim must fail because the School is not a state actor.
See, e.g., Cohen v. President & Fellows of Harvard College, 568
F. Supp. 658, 660-61 (D. Mass. 1983).

## Summary Judgment Is Appropriate

The School has moved, in the alternative, for summary
judgment.  Fed. R. Civ. P. 56(b); see, e.g., Pani v. Empire Blue
Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998).

The School's rejection of Getso for his false
statement of credentials is an independent reason why Getso's
claims should be dismissed.  The most generous reading of a
"contract" between the School and Getso is that the School was
extending to Getso an opportunity to apply to its degree
program.  The application process required applicants to list
all prior colleges or universities attended and to certify the
truthfulness of their representations, with clear notification
that a misrepresentation will lead to rejection of the
application.  Getso failed to list any prior colleges or
universities attended, and improperly certified the truthfulness
of his application.  To the extent a contract between the
parties existed, the School rightfully rejected Getso's

17

application and declined to award him a degree based on his

misrepresentation.  Accordingly, no genuine issue of fact exists

as to whether the School breached a contract with Getso

regarding his application to the School's degree program.


Dean Spreadbury, on behalf of the School, exercised

professional judgment in determining that Getso would not be an

appropriate candidate for an undergraduate degree program.  Her

judgment was based on the fact that Getso already has several

degrees, and is therefore ineligible under the program's

published criteria for admission.  It was also based on her

judgment that his dishonesty and refusal to answer reasonable

questions about his credentials made him ineligible.


As explained by the Supreme Court of the United

States:

> When judges are asked to review the substance of a
> genuinely academic decision . . . they should show
> great respect for the faculty's professional judgment.
> Plainly, they may not override it unless it is such a
> substantial departure from accepted academic norms as
> to demonstrate that the person or committee
> responsible did not actually exercise professional
> judgment.

Regents of the Univ. of Mich. v. Ewing, 474 U.S. 214, 225

(1985).  Indeed, the "decision to grant or deny admission to a

student is a quintessential matter of academic judgment," and

18

will not be second guessed by the courts.  Mangla, 135 F.3d at
84.  Dean Spreadbury's decision conformed to the published
criteria of the School program, has not been shown to be a
"substantial departure from accepted academic norms," and cannot
be attacked merely because Getso was unhappy with the outcome.

As described above, the statement by Dean Spreadbury
that forms the basis of Getso's promissory estoppel claim is
vague and ambiguous, and not one on which Getso could have
reasonably relied as a binding promise.  In the November 2005
email, Dean Spreadbury merely informed Getso of the requirements
that would be necessary for an Associate in Arts degree, but did
not suggest that passing those classes would guarantee a degree.
Indeed, in the email Dean Spreadbury invited Getso to discuss
the application process with her, indicating that he needed to
apply to the program.  Thus Getso cannot credibly argue that he
reasonably relied on this email as a promise that he would be
enrolled in the degree program and awarded a degree.

Getso's statement in support of his opposition also
fails to raise any genuine issues as to any material fact.  He
does not dispute that applicants to the School's undergraduate
degree programs must apply and be accepted, that the online

19

application warns students that failure to list a prior school on the application is an independent ground for rejecting the application, or that his application did not disclose any prior colleges attended or degrees earned.

Instead, Getso contends that information about his prior degrees was previously provided to the School in a letter from November 2005.  (Opp. Br. ¶ 2 & Ex. F.)  However, the application required that Getso fully disclose his educational history in the application, which he failed to do.  Rather than fully disclose Getso's educational history, the 2005 letter made limited references that led Dean Spreadbury to ask further question, which Getso did not answer.  The 2005 letter was not certified and contradicted Getso's subsequent certified application, in which he indicated that he did not receive any degrees from any other colleges or universities.

Even if Getso's false application were excused, he was still appropriately rejected from the degree program because it is unavailable to individuals with secondary degrees.

The remaining averments in Getso's papers are irrelevant to his claims.  Getso states that he was contacted by

the School regarding financial aid, which he contends is usually
provided to degree candidates.  (Opp. Br. ¶ 4; Am. Compl. ¶ 10.)
The fact that such aid is often provided to degree candidates
does not establish that he was, in fact, a degree candidate.
Further, he was contacted by the School to gather information
that was missing from his application for financial aid.  Getso
also notes his concern that a Fall 2010 class at the School may
be cancelled or taught by a substitute professor.  (Opp. Br.
¶¶ 1, 23.)  This concern neither relates to claims in the
amended complaint nor constitutes an independent claim, as it is
not known whether the class or Getso was affected.

**Conclusion**

        Based on the conclusions and facts set forth above,
the motion to dismiss the amended complaint with prejudice and
for summary judgment is granted.

        It is so ordered.

New York, NY
January  6 , 2011

                                    ROBERT W. SWEET
                                        U.S.D.J.

21